# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7198 | **DATE** | 4/14/2004 |
| **CASE TITLE** | Otrompke vs. Chairman of the Committee | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court concludes that it should abstain in this case pursuant to Younger v. Harris. The parties are ordered to submit simultaneous briefs on or before 4/23/04 on the issue of whether a stay or dismissal of Otrompke's complaint is appropriate. This case is set for status and ruling on 4/29/04 at 9:30 a.m. Otrompke's renewed rule 11 motion and motion to show cause and for injunctive relief (25-1,2,3) are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | APR 20 2004 | | 31 |
| ✓ | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | OR6 | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |



JOHN JOSEPH OTROMPKE,     )
    )
    Plaintiff,     )
    )
vs.     )     Case No. 03 C 7198
    )
CHAIRMAN OF THE COMMITTEE     )
ON CHARACTER AND FITNESS FOR THE     )
FIRST JUDICIAL DISTRICT OF ILLINOIS,     )
ARLEEN ANDERSON, JAMES CARROLL,     )
EILEEN LETTS, AND ILLINOIS BOARD OF     )
ADMISSIONS TO THE BAR,     )
    )
    Defendants.     )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John Joseph Otrompke has sued the Chairman of the Committee on Character and Fitness for the First Judicial District of Illinois, Arleen Anderson, James Carroll, Eileen Letts, who were members of an inquiry panel of that Committee, and the Illinois Board of Admissions to the Bar, claiming that defendants' failure to approve his admission to the Illinois bar and their delay in granting him a hearing constitute violations of his rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution. He also asserts state law claims of invasion of privacy, intentional infliction of emotional distress, and loss of consortium. In addition to requesting an immediate hearing before the Committee, Otrompke also requests that the Court permanently enjoin the defendants from requiring bar applicants to sign liability waivers as a condition of receiving a hearing before the Committee. Defendants have moved to dismiss Otrompke's complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil

31

Procedure. For the reasons stated below, the Court abstains from exercising jurisdiction over Otrompke's claims but defers pending further briefing determination of whether we should dismiss the case or instead should stay it.

## Background

The following facts are taken from the allegations in Otrompke's complaint.

Otrompke graduated from DePaul University College of Law and passed the Illinois bar examination and its component parts, including the Multistate Professional Responsibility Exam. Despite the fact that Otrompke completed these requirements nearly three years ago, he has not received a law license. Nor has he been given a hearing before the Committee at which he is allowed to call witnesses on his behalf, despite having requested one in February 2001.

On July 4, 2000, three weeks before Otrompke was set to take the bar examination, he was arrested by Chicago police officers after intervening when he observed an officer arresting an individual who had just left a political meeting that Otrompke had also attended. Otrompke asked for the officer's badge number and threatened to file an administrative complaint against him. Otrompke was arrested for disorderly conduct, but the charges were later dropped. Otrompke claims that he was arrested for political purposes, as the meeting he had attended just prior to his arrest concerned an organization that advocates political dissent.

After Otrompke received a passing score on the bar exam, defendant Arleen Anderson, a member of the Committee on Character and Fitness, scheduled a hearing to inquire as to his fitness to receive an attorney's license. At this point we depart from the complaint to briefly review the process for admission to the Illinois bar.

The Illinois Supreme Court created the Board of Admissions to the Bar and the

2

Committee on Character and Fitness to assess the moral character of each potential candidate for admission to the Illinois Bar. Ill. Sup. Ct. R. 701, 702. Every applicant to the Illinois bar must file a character and fitness registration application, which the Board then forwards to the Character and Fitness Committee. Ill. Bar Admis. R. 3.2c; Ill. Sup. Ct. R. 704 (a), (b). A Committee member evaluates the application, and if he or she is unable to recommend certification, the Committee Chairman assigns the application to a three-member inquiry panel for further examination. Ill. Bar Admis. R. 5.2a. The way the panel review is conducted is determined by the panel chairperson, including the decision of whether to require the applicant to appear personally before one or more of its members. Ill. Bar Admis. R. 5.2(b),(c).

The decision of the majority of the panel members is then reported to the full Committee for determination of whether the panel's recommendation should be affirmed or whether the matter should be referred to a hearing panel. *Id.* If the full Committee votes to withhold certification or recommends referral to a hearing panel, the Committee chairperson appoints a hearing panel consisting of the remaining members of the full Committee who were not on the inquiry panel. Ill Bar Admis. R. 5.3a. At the conclusion of the hearing, a member prepares the findings and conclusions of the Hearing Panel, in the event that the panel votes not to recommend certification of the applicant. *Id.* An applicant may appeal an adverse decision by the hearing panel to the Illinois Supreme Court, though the court generally will not overturn the panel's decision absent a showing that it was arbitrary. *In re Latimer*, 11 Ill. 2d 327, 330, 143 N.E.2d 20, 22 (1957).

The Character and Fitness Committee's hearing in Otrompke's case was held before an inquiry panel consisting of defendants James Carroll, Arleen Anderson, and Eileen Letts.

3

Unbeknownst to Otrompke at the time, Carroll and the law firm in which he was a partner had previously defended members of the Chicago Police Department who had been accused of civil rights violations. According to Otrompke, the inquiry panel relied heavily on the facts underlying his July 4, 2000 arrest in recommending denial of his application for admission to the Illinois bar. The panel's later written opinion also discusses, however, several other legal problems which Otrompke experienced prior to his 23rd birthday. These include an arrest for scaling the wall of a elevated train station and another arrest for attempting to leave a restaurant without paying for a meal. The board also examined records regarding relationship counseling that Otrompke underwent during law school, as well as his rather tumultuous work history.

The inquiry panel met for a second time in May 2002. The panel declined to recommend certification of Otrompke and issued a six-page opinion discussing the basis for its decision. It is unclear from the complaint whether the full Committee voted to uphold the inquiry panel's decision. Otrompke, however, appears to allege that he has yet to be allowed to go before a hearing panel to present evidence on his behalf. Under Illinois law, such complaints should be directed to the Illinois Supreme Court. Otrompke, however, did not follow that course, instead filing suit in this Court on October 10, 2003. On October 22, 2003, the Board of Admissions and the Committee on Character and Fitness mailed Otrompke a letter requesting that he sign a standard waiver of liability form before he would be allowed a hearing. The substance of this waiver essentially provided that as an inducement to the Board of Admissions to conduct an investigation into Otrompke's application, he would release the Board and its members from any liability arising out of the investigation. Pl's Reply to D's Resp. to Motion for *Taylor* Relief p. 7.

4

## Discussion

Otrompke claims that he has been improperly deprived of his right to engage in the practice of law in Illinois. He contends that defendants' decision to deny him admission to the Illinois bar was based on the fact that he was arrested while engaging in constitutionally protected political activity and that the board's decision was effectuated without adequate due process. Otrompke also claims that inquiry panel member Carroll is biased against him and that Carroll's decision to deny Otrompke's application was made in bad faith as a result of this bias. Before we may address the merits of Otrompke's constitutional claims, we must determine whether the *Younger* abstention doctrine precludes the Court from exercising jurisdiction over these claims. We conclude that it does.

*Younger v. Harris*, 401 U.S. 37 (1971), requires federal courts to abstain from ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate. *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002), citing *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 436-37 (1982). It has long been held that the bar admission process amounts to a judicial proceeding within the meaning of Younger. *See Hale v. Committee on Character and Fitness of the State of Illinois*, 335 F.3d 678 (7th Cir. 2003). Moreover, there is no question that the state proceedings are still "ongoing." *See Edward v. Ill. Bd. Of Admissions*, 261 F.3d 723, 727, 28 (7th Cir. 2001). Further, it is undisputed that state bar admission proceedings implicate the important state interest of regulating persons who are authorized to practice law in the state. *See Storment v. O'Malley*, 938 F.2d 86, 89 (7th Cir. 1991).

5

Otrompke does not contend that he would be unable to bring his constitutional claims before the Illinois Supreme Court as part of the appeal process provided by Illinois law. The fact that he has made no effort to do so does not assist Otrompke in his claim that state procedures are inadequate. As the United States Supreme Court has emphasized, "when a litigant has not attempted to present his federal claims in related state court proceedings, a federal court should assume that state procedures will afford an adequate remedy in the absence of unambiguous authority to the contrary." *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). There is no serious question that the Illinois Supreme Court is capable of resolving such constitutional claims. *See Hale*, 335 F.3d at 683.

The primary point of contention between the parties appears to concern whether the requisite extraordinary circumstances are present such that the Court should enjoin the state court proceedings and decide Otrompke's constitutional claims, despite the fact that the *Younger* factors point toward abstention. Otrompke bears the burden of demonstrating the existence of such circumstances. *Green*, 281 F.3d at 667, citing *Ramsden v. AgriBank, FCB*, 214 F.3d 865, 871 (7th Cir. 2000). In order to make such a showing, Otrompke must demonstrate:

> "(1) the 'state proceedings is motivated by a desire to harass or is conducted in bad faith,' *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); (2) there is 'an extraordinarily pressing need for immediate equitable relief,' *Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975); or (3) the 'challenged provision is flagrantly and patently violative of express constitutional prohibitions,' *Moore v. [Sims*, 442 U.S. 415, 423 (1979)]."

*Pincham v. Illinois Judicial Inquiry Board*, 872 F.2d 1341, 1349 (7th Cir. 1989) (quoting *Jacobson v. Village of Northbrook Municipal Corp.*, 824 F.2d 567, 569-70 (7th Cir. 1987)). Though Otrompke alleges that defendants' conduct violated his constitutional rights, he does not contend that their conduct was flagrantly and patently violative of the Constitution. Thus the

6

Court need only address the factors of bad faith and extraordinarily pressing need.

Otrompke contends that he has presented "enough bad faith to fill a warehouse." Pl's. Resp. p. 8. He argues that defendant Carroll is biased against Otrompke's admission to the bar because the firm at which Carroll is a partner has in the past represented members of the Chicago Police Department in claims brought against them for alleged civil rights violations. As a result, Otrompke contends that Carroll's decision to deny Otrompke's bar admission application was made in bad faith and was motivated by his desire to "coax additional work from Illinois police departments, to discourage his political adversaries and to line his own pockets."

These allegations, however, fall short of meeting the high threshold required to overcome abstention. In order to establish that he is entitled to the bad faith exception to *Younger*, a plaintiff must allege specific facts to support inferences of bad faith and bias. *Pincham*, 872 F.2d at 1349-50. He must present more than mere allegations and conclusions. *Id.* Otrompke's claim can only be characterized as speculative. His contention, made on information and belief, that defendants intended to "discourage [him] from continuing to pursue his attorney's license, to crush [his] spirit of dissent, and to erode his will to live" falls far short of the standard required to show bad faith. Further, the mere fact that Carroll in the past has represented police officers in cases involving claims that they violated individuals' civil rights is insufficient to suggest that Carroll's decision regarding Otrompke's application was the result of bias or was made in bad faith. Under this line of reasoning, any judge who may have, before appointment to the bench, sued or defended police officers would be considered biased and obligated to recuse himself in any matter involving police misconduct. Otrompke cites no support for such a rule.

With regard to Otrompke's contention that the board should not have been allowed to

consider his July 4, 2000 arrest, *Younger* itself seems to dispose of this argument. *Younger* held that where a statute or conduct has the incidental effect of inhibiting first amendment rights, it can still be upheld if the effect is minor in relation to the need to control the conduct and lack of alternative means for doing so. 401 U.S. at 51. Because this appears to be exactly what has happened in Mr. Otrompke's situation, he has failed to meet his heavy burden of demonstrating that the board's decision to deny his admission to the Illinois bar was made in bad faith or was the result of bias.

Next Otrompke appears to argue that the Court should exercise jurisdiction over his claims due to timeliness concerns. Otrompke does not allege, however, that there is an "extraordinarily pressing need for immediate equitable relief." Instead, however, he merely contends that the Court should not abstain due to the delay of over three years that he has already suffered, thus making federal intervention the only way for him to receive a timely decision. However, because of the important state interest implicated here, as well as the fact that the Illinois Supreme Court is capable of resolving his federal claims, Otrompke's concerns regarding delay are best left to the state court as well.

None of the cases Otrompke cites supports refusal to abstain or its converse, enjoining the Illinois bar admission proceedings. *Black v. Cook County Officers Electoral Board*, 750 F.Supp. 901 (N.D. Ill. 1990), and *Misurelli v. Racine*, 346 F.Supp. 43 (E.D. Wis. 1972), do not even involve *Younger* abstention. Nor does *United States ex rel. Morgan v. Sielaff*, 546 F.2d 218 (7th Cir. 1976), which was a representative habeas corpus case. Further, *Bickham v. Lashof*, 620 F.2d 1238 (7th Cir. 1980), and *Lynk v. Laporte Superior Court No. 2*, 789 F.2d 554 (7th Cir. 1986), are distinguishable as in those cases, unlike this one, there were no pending state court

proceedings in which the plaintiffs could present their claims. In short, Otrompke has provided the Court with no authority for enjoining ongoing state proceedings based on the type of delay that has occurred here.

In sum, the *Younger* factors favor abstention in this case. The question remaining is whether we should dismiss this action or merely stay it pending resolution of the Illinois proceedings. *See Green v. Benden*, 281 F.3d 661, 667 (7th Cir. 2002). A stay may be appropriate when a plaintiff is foreclosed from bringing his damages claims in the state proceeding. *Id.*, citing *Majors v. Englebrecht*, 149 F.3d 709, 714 (7th Cir. 1998); *Simpson v. Rowan*, 73 F.3d 134, 138-39 (7th Cir. 1995). Neither side has yet commented on this issue, and the Court is unwilling to decide it without further comment from the parties.

### Conclusion

For the foregoing reasons, the Court concludes that it should abstain in this case pursuant to *Younger v. Harris*. The parties are ordered to submit simultaneous briefs on or before April 23, 2004 on the issue of whether a stay or dismissal of Otrompke's complaint is appropriate. This case is set for status and ruling on April 29, 2004 at 9:30 a.m. Otrompke's renewed rule 11 motion and motion to show cause and for injunctive relief [Docket # 25] are denied.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 14, 2004

9